IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:23-CR-471 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | |
| | ) | |
| KENNETH EMMANUEL SMITH, | ) | SENTENCING MEMORANDUM |
| | ) | |
| Defendant. | ) | |

Now comes the United States of America, by and through its attorneys, Rebecca C. Lutzko, United States Attorney, and Adam J. Joines, Assistant United States Attorney, to file this Sentencing Memorandum. This Court should sentence Kenneth Emmanuel Smith to the high end of the Guideline range because such a sentence would meet the goals of 18 U.S.C. § 3553(a). Smith obtained and sold guns involved in shootings, including murders. He sold guns with accessories like switches and extended magazines that turned pistols into functional machine guns. He made significant profit by helping criminals rid themselves of evidence connected to their shootings. A sentence on the high end of the Guidelines would be sufficient, but not greater than necessary, to provide just punishment for Smith's offense, afford adequate deterrence to criminal conduct, and protect the public. *See* 18 U.S.C.§ 3553(a)(2).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Smith Possesses and Sells Firearms Associated with Prior Shootings.

From June to August 2023, Smith sold a total of 32 firearms to undercover ATF Special Agents. Those firearms, the dates of sales, and prices are listed in the Superseding Indictment (R. 17, PageID 51–52), Plea Agreement (R. 20, PageID 73–75), and Final Presentence

Investigation Report ("PSR") (R. 24, PageID 134–37). Those firearms had various notable characteristics that showed Smith's sales were illicit. Smith's firearms included or were connected to:

- 8 large-capacity, "extended" magazines (capable of holding more than 15 rounds of ammunition);

- 10 stolen firearm reports;

- 1 "switch," which allows a firearm that normally can only fire semi-automatic (requiring the trigger be squeezed per each round fired) to fire fully automatic (hold down the trigger for rounds to be fired in bursts or continuously);

- 2 "ghost guns," which are unserialized firearms that cannot be traced back to a given manufacturer and are therefore more difficult for law enforcement to track; and

- 30 National Integrated Ballistic Information Network (NIBIN) hits, which indicate that the firearm was discharged previously and the casings in a shooting incident were recovered and matched to the given firearm.

*Id.* Several of the NIBIN hits on Smith's firearms involve violent offenses and homicides. For example (but not all-inclusive of the 30 NIBIN hits mentioned above):



■ ███████████████████████████████

During the purchase period, Smith would routinely contact ATF Special Agents stating that he needed to sell the firearms in his possession quickly. Smith often implied to ATF that he obtained the firearms from others and was selling them because they were involved in shootings like those above.

Additional details and facts regarding Smith's possession of these firearms—which Smith could not legally possess because he was convicted previously of Attempted Felonious Assault, a violation of Ohio Revised Code §§ 2923.02 and 2903.11(A)(2)—are described in greater detail in the Superseding Indictment (R. 17), Plea Agreement (R. 20), and Final PSR (R. 24).

## II.   LAW AND ARGUMENT

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable [United States Sentencing] Guideline range." *Gall v. United States*, 552 U.S. 38, 49 (2007). After that, it must analyze the factors in 18 U.S.C. § 3553(a). Appellate courts must review a district court's sentence for procedural and substantive reasonableness. *Id.* at 51. Although the Guidelines are advisory, appellate courts may apply a presumption of reasonableness to a sentence that falls within the Guideline range. *Id.*

### A.   Advisory Guidelines Calculation.

Consistent with the final PSR, which uses the 2021 Guidelines, the United States believes Smith's offense level guideline calculation should be:

| U.S.S.G. § 2K2.1: Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition[1] | | |
|---|---|---|
| Base offense level | 22 | §2K2.1(a)(3)[2] |
| Specific Offense Characteristic – number of firearms (32) | +6 | §2K2.1(b)(1)(B) |
| Specific Offense Characteristic – stolen firearm | +2 | §2K2.1(b)(4)(A) |
| ADJUSTMENT – Total of 30 from (b)(1)—(b)(4) cannot exceed 29 | -1 | §2K2.1, note to (b) |
| Specific Offense Characteristic – trafficking of firearms | +4 | §2K2.1(b)(5) |
| **TOTAL** | **33** | |

(*See* R. 24: Final PSR, PageID 139–40). The parties' plea agreement calculates Smith's total offense level at 34 because it included a +5 enhancement for trafficking of firearms pursuant to the 2023 Guideline §2K2.1(b)(5)(C)(i)(I). (R. 20, Plea Agreement, PageID 70). This references a revision in the 2023 Guidelines to this enhancement section, where previously in the 2021 Guidelines the enhancement was +4. Had Smith committed his offenses after November 1, 2023, this Guideline calculation would be correct. But because Smith committed his offenses before the 2023 Guidelines became effective on November 1, 2023, the Court should use the 2021 Guidelines to avoid any ex post facto concerns. *See* Guideline §1B1.11. The final PSR correctly identifies this issue (R. 24, Final PSR, PageID 147), and the United States agrees that the 2021 Guidelines should be used. Smith's correct offense level, before acceptance of responsibility, is 33.

Because he timely pled guilty, Smith should receive a reduction of 3 points, bringing his total offense level to 30. Guidelines §§3E1.1(a) and (b).

---

[1] All counts are calculated under this section, and merge into one group because they are closely related (§ 3D1.2(d)). Because there is no additional multi-group adjustment in § 3D1.4, this table is not repeated for every count in the Superseding Indictment.

[2] SMITH has a prior crime of violence conviction (Attempted Felonious Assault, § 2903.11(A)(2)) and several of his firearms included large capacity magazines.

Smith's prior criminal convictions result in a subtotal criminal history score of 2. (R. 24: Final PSR, PageID 143). Several of Smith's prior convictions while a juvenile do not count under §4A1.1(a), (b), or (c) toward his criminal history. (*See id.*, PageID 140–42). Smith's total criminal history category score of 2 places him in criminal history category II. (*Id.*, PageID 143).

B.  Sentencing Guideline Calculation.

Based on an offense level of 30 and criminal history category of II, Smith's sentencing guideline range is 108–135 months. This Court should sentence Smith to the high end of his Guideline range because he effectively trafficked illegal firearms to obscure their origins and histories. These firearms were involved in shootings, including murders, and came equipped with assault-specific components that made them more deadly and effective as weapons of attack. Although there is no evidence that Smith used any of his firearms in these shootings, he should still be held accountable as a de facto accomplice to criminals seeking to distance themselves from the weapons they used to commit crimes.

C.  The Court Should Sentence at the High End of the Guidelines and Consistent with the Title 18, United States Code, Section 3553(a) Factors.

Pursuant to 18 U.S.C. § 3553(a):

The court, in determining the particular sentence to be imposed, shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence, and the sentencing range . . . ;
(5) any pertinent policy statement . . . ;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. . . .

Several of these factors weigh in favor of the United States' request for a sentence at the high end of the Guideline range.

1. <u>Nature and Circumstances of the Offense.</u>

Smith's trafficking and firearm possession emerge from a dark history of dangerous weapons that could, and in fact were, used to shoot and kill other people. Many of those incidents also occurred days or weeks before when Smith obtained and sold them. It suggests that Smith not only knew the circumstances of these murders and assaults, but that he actively helped those people cover up their actions by providing a way to dispose of their weapons. Because Smith acquired these guns and sold them to ATF agents representing themselves as illicit buyers, he sought to prevent other law enforcement from connecting the guns to the shooters directly. It is no surprise that a murderer would want to put distance between himself and the gun he used to kill another human being. Smith gave such shooters that opportunity, and as a result he may have permanently impeded law enforcement from ever solving these cases.

Smith sold many weapons that were equipped with especially dangerous components. Several of the firearms included extended magazines that allow a shooter to fire multiple rounds without reloading. A large-capacity magazine is not necessary for self-defense. A hypothetical citizen carrying a handgun for personal protection does not expect to engage in a prolonged shootout with an attacker. But those who want guns to assault—perhaps kill—others, seek to fire as many rounds as possible at the target they are hunting. Large-capacity magazines like those equipped to Smith's guns provide that advantage.

The switch that Smith sold to ATF on August 8, 2023, was equipped to an unserialized ghost gun. Each of these items is dangerous and indicative of illegal activity. The switch allows

anyone to turn a firearm designed for self-defense into an assault weapon. It makes the gun fully automatic, meaning one pull of the trigger fires multiple rounds in quick succession. Pair the switch with an extended magazine, and suddenly a semi-automatic pistol becomes a machine gun. Serial numbers on firearms allow law enforcement to track and monitor gun use to keep them out of the hands of criminals. Because ghost guns have no such tracking characteristics, they are popular with people intending to commit crimes. As if to illustrate the point, at least one of Smith's ghost guns was involved in NIBIN-related shootings. *See* Exhibit A. Smith's possession of firearms with these characteristics is yet another indicator of his nefarious intent in seeking to traffic firearms used to attack and kill.

Finally, many of the firearms Smith sold were stolen. It is again common sense that criminals are more likely than a law-abiding citizen to steal firearms because (1) it is a crime to steal another person's property and (2) felons by and large cannot purchase firearms legally. Smith's possession of stolen firearms shows he is trafficking guns that others obtained illegally, and thus were by their nature involved in prior crimes. All of these circumstances demonstrate that Smith was not simply buying and selling guns without a license. He was actively trafficking especially dangerous firearms used by criminals so he could help them cover up their shootings. His sentence should reflect this purpose.

        2.    <u>The Need for the Sentence to Reflect Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment.</u>

The Court needs to impose a significant sentence because Smith's actions, though not themselves violent, furthered violence in Cleveland by helping criminals dispose of guns involved in shootings. Smith does not have a lengthy criminal history, though that might be explained by him being only 23 years old. He does have several troubling felonies, including an attempted felonious assault and failure to comply with order, signal of a police officer (*see* R. 24:

7

Final PSR, PageID 142) and several juvenile convictions (*id.*, PageID 140–42). Even if Smith is not a multi-incident shooter himself, he has handled at least 9 guns linked to murders, assaults, and other shootings. He has connections to these incidents, which are only part of his broader sale of 32 illegal firearms that profited him over $24,000.

Smith had a chance to do the right thing with the guns he acquired. He could have turned them in to law enforcement. He could have helped police solve those murders. He could have saved lives by stopping the flow of illegal firearms from shooters to unknowing buyers who intend to remove them from the Cleveland area. Instead, Smith chose to turn a profit by helping shooters distance themselves from the guns they used to commit crimes. Smith helped criminals make Cleveland a more dangerous place. Such conduct offends the laws we have to protect people from violence. This level of disrespect for the law requires strict punishment befitting the crime.

        3.      <u>The Need for the Sentence to Protect the Public.</u>

Smith provided violent criminals a way to hide evidence of their crimes. The damage guns cause in the hands of criminals is beyond dispute. The heightened dangerousness of firearms with switches, extended magazines, or were stolen, is evidence in the nature of those characteristics. Although there is no evidence that Smith shot anyone or otherwise used the guns he sold, he took the guns shortly after many were involved in shootings, which destroyed potential direct connections between the firearms and the shooters. Because of Smith's services, those who used his guns to kill may never be brought to justice. A sentence at the high end of the Guidelines would protect the public from Smith's future trafficking activities. It would also send a message to other potential traffickers that such activity will not be tolerated by this Court.

**III.    CONCLUSION**

For the foregoing reasons, a sentence at the high end of the Guidelines is sufficient, but not greater than necessary, to meet the goals of 18 U.S.C. § 3553(a).  The United States will be prepared at the sentencing hearing to elaborate on these points, answer the Court's questions, and refute additional argument from Smith in support of a lesser sentence.

Respectfully submitted,

REBECCA C. LUTZKO
United States Attorney

By:    /s/ Adam J. Joines
       Adam Joines (OH: 0094021)
       Assistant United States Attorney
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3929
       (216) 522-8354 (facsimile)
       Adam.Joines@usdoj.gov